IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CASSANDRA M-L,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-cv-966-CJP[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for disability benefits in May 2014, alleging disability as of March 15, 2014. After holding two evidentiary hearings, ALJ Christina Young Mein denied the application on March 9, 2017. (Tr. 20-32). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr.

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 31.

1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ did not properly consider plaintiff's RFC in that she failed to properly evaluate her headaches, fibromyalgia, and neuropathy.

2. The ALJ erred in discounting the opinion of treating physician Syed Hussain.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes and regulations.[3] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience

significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while

judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.   See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### **The Decision of the ALJ**

ALJ Mein followed the five-step analytical framework described above.  She determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date.  She was insured for DIB through March 31, 2016.[4]

The ALJ found that plaintiff had severe impairments of vertigo, fibromyalgia, neuropathy, migraine headaches, depression, and seizures.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the sedentary exertional level with some physical and mental limitations.  Based on the testimony of a vocational expert, the ALJ concluded that plaintiff was not able to do her past work, but she was not disabled because she was able to do other jobs which exist in significant numbers in the national economy.

### **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.  The following summary of the record is directed to the points raised by plaintiff.  As plaintiff has not raised an argument related to her mental impairments, the Court will not summarize her mental health treatment.

1. **Prior Denial**

---

[4] The date last insured is relevant only to the claim for DIB.

A prior application for benefits was denied on March 14, 2014. (Tr. 117).

2.  **Agency Forms**

Plaintiff was born in 1972. She was almost 42 years old on the alleged onset date. (Tr. 326). Plaintiff said she was laid off from her job in February 2011 for leaving work due to her condition. She had a 12th grade education. She had worked as a deli worker, a medical assistant, and a security guard. (Tr. 331-332).

Plaintiff submitted a function report in August 2014 stating that she spent most of the day resting. She did housework such as cleaning, laundry, and ironing only on 1 day every 2 weeks. She could not sit or stand for long periods. She could not stoop or bend over because of dizziness. She had "attacks" and had to lie down. She used a cane as needed for balance. (Tr. 338-346).

2.  **Evidentiary Hearing**

Plaintiff was represented by an attorney at both evidentiary hearings. (Tr. 38, 49).

At the hearing in April 2016, plaintiff testified that she was married and lived with her husband and 13 year old child. (Tr. 55). She was covered by Medicaid. (Tr. 56).

Plaintiff said she could not work because of fibromyalgia pain, diabetic neuropathy, inability to stand for long periods, seizure-like episodes, and shortness of breath. She could not be alone because she was a fall risk. She used a walker. (Tr. 61-62). She also had headaches. (Tr. 69-70).

A vocational expert also testified. As there is no issue as to her testimony, it will not be summarized.

The ALJ submitted a "vocational interrogatory" to the VE after the first hearing. See, Tr. 414-430. Because additional evidence was added to the record, the ALJ gave plaintiff the opportunity to request a second hearing. The second hearing was held in January 2017.

Plaintiff was wearing a brace on her right hand because of tendonitis. She was scheduled to have surgery. She had bilateral carpal tunnel syndrome and tendonitis. This affected her ability to use both of her hands. She had diabetic neuropathy in both lower legs. She had to keep her feet elevated all day in order to be comfortable. (Tr. 41-43).

Plaintiff testified that she needed to use a cane to help her keep her balance. She lost her balance because of vertigo. (Tr. 43-44).

A VE gave additional testimony. Plaintiff has not raised an issue as to the VE's testimony.

### 3. Medical Records

Plaintiff was seen by Dr. Michael Liu, a neurologist, in 2014 and 2015. She was first seen by him on referral from Dr. Hussain, her primary care provider, for vertigo and "body pain." The first visit was in January 2014, three months before the alleged onset date. The exam showed normal muscle tone and bulk and full muscle strength. Plaintiff's coordination, reflexes, sensation, and gait were also normal. She had diffuse tenderness. He assessed her with headache and

fibromyalgia, and prescribed Lyrica and Topamax. She was also to take 100 mg. of Sumatriptan when she felt a migraine coming on. He prescribed physical therapy. (Tr. 462-465).

Plaintiff's prior application was denied on March 14, 2014. (Tr. 117).

On March 20, 2014, Dr. Liu noted that her vertigo was usually associated with a headache and she could not really describe it as vertigo (spinning), lightheadedness or disequilibrium [sic]. They are not associated with headache." She said she was having headaches every other day. Sumatriptan helped her headaches. She also had pain "all over the body." Her insurance would not authorize Lyrica. (Tr. 459-461).

She was discharged from physical therapy on March 25, 2014, because she failed to attend her appointments. (Tr. 475).

Plaintiff saw Dr. Liu three more times between April 2014 and January 2015. (Tr. 448-458). She had a normal EEG and normal MRI of the brain. He noted tenderness over the shoulders, elbows, wrist, hips, and knees in September 2014. (Tr. 453). In January 2015, she had "tenderness all over the place." (Tr. 450). She had headaches a couple of times a week. She took Topamax every day and took Sumatriptan when she had a headache. It helped some. She also took Vicodin prescribed by her family doctor. She took Gabapentin for her myalgia, which helped some, but caused drowsiness. She was not doing the stretching exercises that Dr. Liu had recommended. He instructed her to increase the dosage of Gabapentin and told her to do stretching exercises. (Tr. 448).

Plaintiff received primary care from the Heath and Opportunity Center. Dr. Syed Hussain was her primary care physician, but she was also seen by a physician's assistant named Daphene Smith.

She saw Dr. Hussain on May 1, 2014. She complained of pain all over, feeling weak, and problems with balance. He noted that she was seeing Dr. Liu. (Tr. 521).

Dr. Hussain completed a form to assess plaintiff's ability to do work-related activities on May 22, 2014. He checked a box indicating that she had lifting and carrying limitations, but did not say how much she could lift. She was limited to 1 hour total of standing/walking because of "fibromyalgia; generalized weakness." She was limited to 2 to 3 hours total of sitting, but her feet did not need to be elevated. She could never climb, balance, or crouch or kneel, but could occasionally stoop and crawl. Handling, feeling, and pushing/pulling were affected, but he did not say how they were affected or cite any medical findings. At the end of the form, Dr. Hussain wrote "Pt has fibromyalgia [with] lot of musculoskeletal + neurological manifestations." (Tr. 596-598).

She saw Dr. Hussain on May 23, 2014, as a walk-in. Her complaint was "I pass out." She also complained of snoring a lot. He recommended an EEG to investigate a possible near-syncope episode and a sleep study to investigate sleep apnea. He also assessed fibromyalgia. (Tr. 522).

Dr. Hussain diagnosed diabetes in June 2014 and prescribed Metformin. (Tr. 523).

Dr. Adrian Feinerman performed a consultative examination of plaintiff in October 2014. On exam, she was 5'1" tall and weighed 180 pounds. There was no anatomic abnormality of her extremities and no redness, warmth, thickening or effusion of any joint. Her joints, including her elbows, knees, shoulders, and elbows, had a full range of motion. She had some limitation of range of motion of the lumbar spine. Straight leg raising was negative. She was able to do a variety of fine and gross manipulations with both hands without difficulty. Muscle strength was normal throughout. Romberg's test was negative. She would not walk or stand without a cane, and she was "continuously weaving around because of problems with her balance." Sensory examination was normal to vibration, light touch, and pinwheel. Dr. Feinerman diagnosed diabetes, hyperthyroidism, and degenerative joint disease.

In December 2014, she complained to Dr. Hussain of feeling weak. She was using a cane. She said she could not stand for a long time. (Tr. 580).

On July 1, 2015, plaintiff complained of increased numbness, tingling, and pain in her lower extremities. P.A. Smith instructed plaintiff to increase her dosage of Gabapentin. (Tr. 577). On July 15, 2015, plaintiff told PA Smith that the increase in Gabapentin "provided much relief." (Tr. 575).

Dr. Liu saw plaintiff for the last time on July 17, 2015. She said she had three headaches a week. They lasted one to two hours and were not associated with nausea or photophobia. Her headaches affected the left temporal region. She complained of pain all over her body. Her leg was the worst and she was

walking with a cane. On exam, she had no atrophy or abnormal movement. She had tenderness over the bilateral shoulders, chest, elbow, wrist, hips, and ankles. Dr. Liu instructed her to increase her dosage of Gabapentin. (Tr. 601-604).

In November 2015, plaintiff told PA Smith that she had "frequent witnessed epileptic episodes that lasts [sic] a few minutes." She had been evaluated by a neurologist and had a negative EEG. She requested a new referral. (Tr. 563-565).

Plaintiff saw another neurologist, Dr. Riaz Naseer, in January and February 2016. In January she said she had seizures for the past six months. The associated symptoms were altered level of consciousness, automatic behaviors, and unresponsiveness. She also said she had lower back pain and fibromyalgia. On exam, her gait was slow and wobbly. She had tenderness in the lumbar spine. She had soft tissue discomfort in 18 out of 18 tender points. Dr. Naseer ordered an EEG, which was normal. (Tr. 617-624). In February she complained of numbness in both feet. She said she had two seizures, which she described as "funny feeling in head." On exam, she was again using a cane. She had tenderness in the lumbar spine. She had decreased position sense in the lower extremities and positive Romberg's sign.[5] The assessment was seizures and diabetes with diabetic neuropathy. The dosage of Topamax was increased to treat her seizures. She was to return in six months. (Tr. 610-614). There are no

---

[5] Romberg's sign is "a diagnostic sign of tabes dorsalis and other diseases of the nervous system consisting of a swaying of the body when the feet are placed close together and the eyes are closed." https://www.merriam-webster.com/medical/Romberg's%20sign, visited on July 23, 2018.

further records from Dr. Naseer.

Plaintiff saw PA Daphene Smith several times from February through October 2016. (Tr. 569-573, 638-). The records reflect that plaintiff's blood sugar was improved as she was taking Metformin. She denied headaches but complained of numbness and tingling. There were no complaints of seizures or passing out.

Plaintiff saw a podiatrist, Dr. Brown, in October 2016. She had a fungal infection in her toenails and tinea pedis (athlete's foot). She had numbness with decreased appreciation of sharp/dull and light touch/pressure in both feet. Dr. Brown prescribed supportive foam insoles with arch supports and antifungal cream. (Tr. 650).

## Analysis

Plaintiff first argues that the ALJ failed to adequately consider the evidence regarding her headaches, fibromyalgia, and neuropathy.

The ALJ did not analyze any of the medical evidence detailed above regarding her headaches. The only reference to treatment for headaches was "Further, migraine headaches are generally treated with Topamax twice a day and Sumatripton [sic] when she feels a headache coming on, and she was advised on ways to limit rebound headaches." (Tr. 28). She noted several times that an MRI of the brain was normal, but a normal MRI does not mean that a person does not have headaches. "Doctors use MRIs *to rule out other possible causes of headache*—such as a tumor—meaning that an unremarkable MRI is completely

consistent with a migraine diagnosis." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014), as amended on denial of reh'g (Oct. 24, 2014).

The ALJ here seemingly considered only the effect of headache on plaintiff's balance. She noted that plaintiff testified that her headaches "make her off-balance." (Tr. 26). Accordingly, she specified that plaintiff was limited to only occasional balancing because of vertigo and migraines. (Tr. 25). It is true that plaintiff said her balance got worse when she had headaches, but the ALJ seems to have ignored the primary symptom of her headache, that is, that her "head start[s] hurting real bad." (Tr. 70).

The medical records reflect continued treatment for headaches from two neurologists. The ALJ found that plaintiff has the severe impairment of migraine headache, but essentially ignored these records. Of course, migraine headache is not a per se disabling condition. However, the ALJ was required to analyze the records of treatment for migraines and explain how her RFC assessment accommodated the effect and symptoms of migraine headache reflected therein.

Similarly, the ALJ made little mention of the medical records relating to fibromyalgia and neuropathy, although she found that these were severe impairments. She failed to explain how the medical evidence supported her RFC assessment. In her brief, defendant discusses the medical evidence that was ignored by the ALJ, but an after-the-fact explanation not articulated by the ALJ is not sufficient. *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012).

While it is true that an ALJ is not required to discuss every piece of evidence

in the record, it is well-established that an ALJ "may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014), collecting cases. Here, the ALJ failed to meaningfully engage with much of the medical evidence. It is not for the Court to "scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon*, 763 F.3d at 72.

An ALJ's decision must be supported by substantial evidence, and the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009), internal citations omitted. Further, the *combined* effects of all of plaintiff's impairments must be considered. *Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014).

The Court must conclude that ALJ Mein failed to build the requisite logical bridge here. Remand is required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Kastner v. Astrue*, 697 F.3d at 646, citing *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

In view of the disposition of plaintiff's first point, a discussion of her second point is not required. The ALJ rejected Dr. Hussain's opinion in part because she thought the limitations he assigned were not supported by the medical evidence.

(Tr. 29). On remand, Dr. Hussain's opinion should be reweighed in light of the ALJ's consideration of all of the medical evidence in the record.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## **Conclusion**

The Commissioner's final decision denying plaintiff's application for social security disability benefits is REVERSED and REMANDED to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:   July 24, 2018.**

                                          **s/ Clifford J. Proud**
                                          **CLIFFORD J. PROUD**
                                          **UNITED STATES MAGISTRATE JUDGE**